

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
ERIE, PENNSYLVANIA

| | |
|---|---|
| CATHY JORITZ<br>501 Jefferson<br>Edinboro, PA, 16412-2018<br><br>    Plaintiff<br><br>    v.<br><br>EDINBORO UNIVERSITY OF<br>PENNSYLVANIA<br>219 Meadville Street<br>Edinboro, PA, 16444<br><br>    Defendant | CASE NO.: 07-230 Erie<br><br>JUDGE:<br><br>MAGISTRATE JUDGE:<br><br><br><br>**COMPLAINT**<br><br>**(Demand For Jury Trial Endorsed Hereon)** |

Plaintiff *Pro Se*, CATHY JORITZ, states for her Complaint the following::

### INTRODUCTION

This is a legal action by an individual person against a public university for multiple violations of Title VII of the Civil Rights Act of 1964 as codified under 42 U.S.C. § 2000e, et seq., and state common law breach-of-contract theories. Plaintiff was employed by Defendant Edinboro University as a tenure-track professor in the university's Art Department/animation section, known as the "Cinema/Animation Area", beginning in 2003. As a tenure-track professor Plaintiff's contract presumed contract renewal absent some cause to the contrary. Shortly after beginning her employment Plaintiff noted a distinctly pro-male bias on the part of her all-male peer group in the Animation Area. Within weeks Plaintiff encountered numerous instances of

grossly offensive, sexually based material in the public areas of the animation classrooms, computers, and drawn on the wooden light tables in the animation area.

Plaintiff brought the offensive material to the attention of her peers as well as the university administration. Little was done to remedy the situation. Her departmental superiors and peers began to retaliate against her, denying her access to opportunities and duties commensurate with her position and vital to her ability to compete for tenure; slandering her and demeaning her to her peers and to entire student classes alike; excluding her from participating in key departmental functions and decisions; failing/refusing to investigate her substantive complaints in violation of her employment contract; manufacturing allegations of errors and/or policy violations and publicly reprimanding her without giving her the opportunity to address the allegations; assigning/reassigning her duties to new, non-tenure-track hires junior to her; creating the impression that she is incompetent and/or difficult to deal with – both for faculty and students alike; evaluating her performance on contractually impermissible factors and then, under these pretexts, terminating her employment based upon those evaluation criteria.

## PARTIES

1.  Plaintiff Cathy Joritz ("Joritz") is an individual woman and a member of the protected class of females, and was at all times material to this case a tenure-track professor employed by Defendant Edinboro University of Pennsylvania.

2.  Defendant Edinboro University of Pennsylvania ("Edinboro") is a public university operating and situated in the State of Pennsylvania.

## CLAIMS

3.  Based upon the facts stated herein, Plaintiff asserts the following claims:

A. <u>Count I - Title 42 United States Code § 2000e-2 Title VII Sex Discrimination</u> – for Defendant's wrongful creation and maintenance of a pro-male, anti-female working environment that treated Plaintiff, a woman, worse than similarly situated male employees.

B. <u>Count II - Title 42 United States Code § 2000e-2 Title VII Sexual Harassment</u> – for Defendant's wrongful creation and maintenance of, and/or acquiescence to, an atmosphere of sexual harassment or hostility so severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment.

C. <u>Count III - Title 42 United States Code § 2000e-3 – Unlawful Retaliation</u> – for Defendant's discrimination against Plaintiff because she opposed illegal practices and complained about unlawful sex-based employment discrimination and sexual harassment.

D. <u>Count IV - Title 42 United States Code § 2000e-2 – Sex Stereotyping</u> – for Defendant's discrimination against Plaintiff because she failed to meet Defendant's sex stereotypes for women.

E. <u>Count V – Pennsylvania Ohio Common Law Breach of Contract</u> – for Defendant's breach of its employment contract with Plaintiff by evaluating Plaintiff's job performance on criteria outside the scope of Plaintiff's employment contract and terminating her employment on that basis.

## **JURISDICTION**

4. This Court has original jurisdiction over Counts I – IV of this action under 28 USC § 1343; and

5. This Court has pendent jurisdiction over Count V of this action under 28 USC § 1367

## STATEMENT OF FACTS

6. Plaintiff was employed Defendant Edinboro University as a tenure-track professor in the university's animation section, known as the "Cinema/Animation Area", beginning in 2003.

7. As a tenure-track professor Plaintiff's contract presumed contract renewal absent some cause to the contrary.

8. Shortly after beginning her employment Plaintiff noted a distinctly pro-male bias on the part of her all-male peer group in the Cinema/Animation Area.

9. Within weeks Plaintiff encountered numerous instances of grossly offensive, sexually based material in the public areas of the animation classrooms, computers, and drawn on or wooden light tables in the animation area.

10. Not only was most of the material grossly pornographic, it also tended to denigrate women in general. Plaintiff brought the offensive material to the attention of her superiors and peers, who either ignored her, trivialized the offensiveness of the material.

11. Plaintiff met with the university's Women's Studies Committee to discuss the matter. The committee warned her that while her complaints are justified, she may face recriminations by her colleagues for them. Several members of the committee expressed their concern about faculty members mistreating female students by buying them drinks at local bars and behaving in a predatory fashion.

12. The committee resolved to begin working on a brochure on sexual harassment for distribution by the end of the spring semester. The committee also included a detailed synopsis both of Plaintiff's complaints and of the discussion in response in its meeting minutes, which it emailed to 52 recipients across the campus -- including the dean of the liberal arts, who was ultimately responsible for the Cinema/Animation Area.

13. Plaintiff discussed the matter with her immediate supervisor, Art Department Chair Professor Mathie, a male, two weeks later. He said he could not understand why Plaintiff did not approach either her colleagues or him with the problem first.

14. Plaintiff explained that Professors Dunlap and Genz laughed about taking students to inappropriate/misogynist/soft porn animations. Despite Plaintiff's best attempts to explain the problem to Mathie he seemed unable or unwilling to understand why Plaintiff, as a woman, would initially approach other women with this sensitive issue before going to any males – especially those who were actively fostering and promoting the offensive material in the first place.

15. Mathie trivialized the other professors' involvement, saying students are exposed to this kind of stuff all the time and that if and when it pops up, Plaintiff should use the subject matter as a point of discussion in class.

16. Either at or before her meeting with Mathie Plaintiff provided him with a videotape copy of offensive pornographic material.

17. Shortly after her meeting with Mathie Plaintiff discovered that someone had drawn and hung a caricature of her in the animation studio. The caricature depicted Plaintiff as a huge, muscular, threatening witch hovering over a tiny terrified male student. The speech balloon coming from the student's mouth read: "But Jim (one of the other animation professors) laughed at my dirty doodles!" The caricature belittled Plaintiff's attempt to have the rampant pornography curtailed and ridiculed her.

18. The university failed to keep the details of Plaintiff's complaints about the pornographic and demeaning images/material confidential, and soon she became the subject of ridicule and was stigmatized.

19. Plaintiff's supervisor also rebuked Plaintiff in front on another professor who was one of her peers, accusing her of having "ruined the reputation of the [Animation] Area." Another peer likewise makes the same exact, verbatim accusation against Plaintiff at approximately the same time and again in Plaintiff's last semester there.

20. Plaintiff's supervisor and peers began to retaliate against Plaintiff for her actions in complaining about the ongoing pornography and sexism in the Cinema/Animation area. Such retaliation included but was not limited to, for example:

  A. Excluding Plaintiff from professional educational opportunities; opportunities to participate in activities upon which her performance would be evaluated; and opportunities to meet other professional colleagues in the state educational system;

  B. Illegally excluding Plaintiff from duties and responsibilities while giving them to a newly hired non-tenure-track professor, thereby denying Plaintiff the opportunity to demonstrate the skills and job performance necessary for her to achieve tenure;

  C. Illegally denying Plaintiff participation in voting on personnel decisions while permitting male tenure-track employees to do so.

  D. Illegally voting to exclude Plaintiff from participating in selecting the film entries for the Animation Area's Annual Spring Student Show – the most important animation event of the year – because she voiced her opposition to some issues in the past;

  E. Lodging trivial or unsubstantiated complaints against Plaintiff as a group;

  F. Soliciting complaints against Plaintiff from other faculty and/or students;

  G. Publicly reprimanding Plaintiff for exercising her right, as a tenure-track professor, to speak directly with the dean, and implying to others that she had acted improperly and in violation of university procedures and protocols;

6

H. Evaluating Plaintiff for retention based upon factors that are, by contract, not part of the retention criteria;

I. Including anonymous internet "student" remarks about Plaintiff in Plaintiff's personnel file, in violation of Plaintiff's employment contract, and basing retention decisions in part on such evaluations;

J. Including a student complaint about Plaintiff in Plaintiff's personnel file without informing Plaintiff or providing her with the opportunity to rebut or address complaint, then basing retention decisions in part on "student complaints";

K. Scheduling and holding important Cinema/Animation meetings without giving Plaintiff any or adequate advance notice;

L. Refusing/failing to take and provide minutes of departmental meetings, thereby denying Plaintiff a record of their illegal activities;

M. Summarily denying Plaintiff access to teaching tools and resources, such as computers and computer programs, thereby impeding her ability to teach high quality classes and negatively impacting her student evaluations;

N. Summarily and without warning locking Plaintiff out of a computer necessary to teach a course thereby impeding her ability to teach high quality classes and negatively impacting her student evaluations;

O. Summarily exchanging Plaintiff's classes with those of another professor, thereby disappointing students who enrolled in the classes and negatively impacting Plaintiff's student evaluation;

P. Revealing details (both true and manufactured/misleading) to students of Plaintiff's opposition, expressed during a tenure-track staff meeting, not to change the

7

employment status of one of her male tormentors from non-tenure-track to tenure-track, thereby prompting some students to protest by wearing t-shirts and hanging signs with messages supporting the male professor in question;

Q. Denying Plaintiff's request at a faculty meeting for a three-day delay, in voting on the makeup of a faculty search committee, for Plaintiff to locate another woman to participate as a search committee member, and ridiculing Plaintiff for making the request;

R. Excluding Plaintiff from information regarding plans, events, teaching schedules, etc., being decided upon by her fellow department members

S. Fabricating reports of complaints allegedly made against Plaintiff by other faculty and students and refusing to provide substantiation; and

T. Revealing and misrepresenting to a male faculty member that Plaintiff, who gave qualified support of his hiring, did not support it, thereby alienating the new faculty against her.

15. When Plaintiff complained in writing about the unethical and discriminatory acts committed against her by a male, non-tenure-track professor who substituted for her while she was on sick leave, the university minimized the matter and failed to take any action.

16. As a result the men in Plaintiff's department became bolder and more secure in the knowledge that their discriminatory actions against plaintiff would not be punished.

17. Plaintiff ultimately met with Dean Terry Smith to discuss various problems emanating from her peers' hostility and/or lack of respect for women in general, and Plaintiff in particular. Plaintiff especially wanted to discuss the fact that her colleagues were complaining about her in an organized and unjustified manner. She expressed great concern that her colleagues' complaints will negatively affect her impending performance evaluations. Smith assured Plaintiff

that getting along with her colleagues is not part of the criteria for retention. According to Smith, teaching effectiveness, continued growth and service to the university and community were the three factors considered for retention. These 3 factors are outlined in Plaintiff's employment contract and emphasized to faculty members.

18. Ultimately Plaintiff's contract (which, as it involves a tenure-track professor, presumes renewal) was not renewed. The primary basis cited was Plaintiff's alleged inability to get along with her peers and/or follow university procedures.

19. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission.

20. The Commission issues Plaintiff her Notice of Right to Sue dated April 20, 2007, while Plaintiff was in Germany.

21. Although Plaintiff understood from her telephone and/or email correspondence with the EEOC that the Notice had been issued, she never received it. Plaintiff ultimately requested that the Notice be sent to her attorney, Randi A. Barnabee, as her duly authorized legal representative.

22. On May 31, 2007, the EEOC faxed the Notice of Right to Sue to Plaintiff's attorney per her request.

23. Plaintiff's 90-day period to file her Title VII and related claims expires at midnight on August 29, 2007, and is therefore timely filed.

### Count I - Title 42 United States Code § 2000e-2, *et seq.*, Title VII Sex Discrimination

24. Plaintiff repeats the allegations contained in Paragraphs 1-23 of this Complaint and incorporates them herein.

25. Plaintiff is a "person" within the meaning of Title VII.

26. Defendant is a "person" and an "employer" within the meaning of Title VII.

27. Defendant wrongfully created, maintained, and perpetuated a pro-male, anti-female working environment that treated Plaintiff, a woman, worse than similarly situated male employees.

28. As a result of Defendant's actions Plaintiff was wrongfully terminated from her employment through contract non-renewal.

### Count II - Title 42 United States Code § 2000e-2, *et seq.*, Title VII Sexual Harassment

29. Plaintiff repeats the allegations contained in Paragraphs 1-28 of this Complaint and incorporates them herein.

30. Defendant wrongfully created, maintained, perpetuated, and/or acquiescence to, an atmosphere of sexual harassment or hostility so severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive working environment.

31. As a result of Defendant's actions Plaintiff was wrongfully terminated from her employment through contract non-renewal.

### Count III - Title 42 United States Code § 2000e-3, *et seq.*, Unlawful Retaliation

32. Plaintiff repeats the allegations contained in Paragraphs 1-31 of this Complaint and incorporates them herein.

33. Defendant discriminated against Plaintiff because she opposed illegal practices and complained about unlawful sex-based employment discrimination and sexual harassment.

34. As a result of Defendant's actions Plaintiff was wrongfully terminated from her employment through contract non-renewal.

### Count IV – Title 42 United States Code § 2000e-2, *et seq.*, Sex Stereotyping

35. Plaintiff repeats the allegations contained in Paragraphs 1-34 of this Complaint and incorporates them herein.

36.     Defendant discriminated against Plaintiff because she failed to meet Defendant's sex stereotypes for women, namely, she failed to act deferentially toward her male colleagues; she failed to act demurely toward her male colleagues; in departmental meetings Plaintiff vocalized her opinions and voted the way she thought best without regard either for the way her male colleagues voted or for the agenda they declared or implied.

37.     As a result of Defendant's actions Plaintiff was wrongfully terminated from her employment through contract non-renewal.

## Count V – Pennsylvania Ohio Common Law Breach of Contract

38.     Plaintiff repeats the allegations contained in Paragraphs 1-37 of this Complaint and incorporates them herein.

39.     Defendant and Plaintiff entered into an employment contract through a collective bargaining process.

40.     Under the terms of the contract certain criteria were established as the basis for evaluating plaintiff's job performance.

41.     Under the contract Defendant agreed to investigate complaints within a reasonable time.

42.     Plaintiff was impermissibly evaluated upon criteria outside the scope designated in her employment contract with Defendant, in breach of said contract.

43.     Defendant failed to investigate Plaintiff's substantive complaints within a reasonable time, even when the bases for said complaints were corroborated by other entities.

44.     As a result of Defendant's breach of contract Plaintiff was wrongfully terminated from her employment through contract non-renewal.

## CONCLUSION

Plaintiff encountered grossly offensive pornography and other crude forms of sexual

expression creating a hostile work environment shortly after she began working for Defendant as a tenure-track professor. When Plaintiff brought the offensive conduct to the attention of Defendant she was not taken seriously by her all-male peer group, who trivialized her complaints, berated her for allegedly "ruining the reputation of the [Cinema/Animation] Area," and ganged up on her so as to strip away all of her rights, responsibilities, and opportunities due her. Plaintiff's male colleagues further conducted a campaign of complaints to Plaintiff's immediate superior, who, in response, invariably acted swiftly against Plaintiff without giving her any semblance of a hearing on the matters. Plaintiff's immediate supervisor failed, however to take any action in response to Plaintiff's many complaints of discrimination by her male colleagues.

Defendants resented Plaintiff and discriminated against her:

    A. Because she was a woman who had entered into what had historically been an all-male department;

    B. Because she failed to act in the subservient and deferential way they expected women to act in their interaction with the men;

    C. Because she was a woman who failed to agree with the decisions and opi9nions of her male colleagues all of the time; and

    D. By creating and maintaining a grossly offensive sexually based working environment and then retaliating against her when she opposed the vulgar and offensive pornography such environment enabled and fostered.

Defendants also breached their employment contract with Plaintiff in the course of their prolonged and widespread discrimination against her.

## JURY TRIAL DEMAND

WHEREFORE, Plaintiff *Pro Se*, Cathy Joritz, respectfully asks this Court to:

A)  Award Plaintiff actual money damages, compensatory damages, and punitive damages in an amount to be determined upon trial;

B)  Award Plaintiff attorneys' fees and costs; and

C)  Order such other appropriate relief as the interests of justice may require.

Respectfully submitted,

*/s/ Cathy Joritz*
Cathy Joritz
Plaintiff *Pro Se*
219 Meadville Street
Edinboro, PA, 16444
814-734-1464